IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JACKIE R. WILKINS,

          Plaintiff,

    Vs.                            No. 05-4074-SAC

KMART CORPORATION,

          Defendant.

MEMORANDUM AND ORDER

        The case comes before the court on the plaintiff's renewed motion for judgment as a matter of law or, in the alternative, for a new trial. (Dk. 109). The defendant filed a written memorandum opposing this motion, (Dk. 113), to which the plaintiff filed a reply, (Dk. 115). With the motion fully briefed, the court is ready to rule.

**FACTUAL BACKGROUND**

        The plaintiff brought this action claiming the defendant discharged him in retaliation for his exercise of rights and remedies under the Kansas Workers' Compensation Act. The district court denied the parties' summary judgment motions, and the case proceeded to trial on April 11, 2007. After hearing less than three full days of evidence, the jury was given the case and deliberated just over one hour before returning its

verdict that the defendant had not discharged the plaintiff in retaliation for his exercise of workers' compensation rights.

A brief overview of the evidence offered at trial suffices as a context for understanding the plaintiff's motion.  The plaintiff worked the third shift at the Kmart Lawrence Distribution Center unloading inventory from incoming trailers.  Having completed just over one month of his ninety-day probation period, the plaintiff notified his supervisor on April 17, 2003, that he was experiencing problems with his right wrist, shoulder and/or neck and attributed his problems to an accident occurring at work several weeks earlier.  Upon learning of this accident and injury, the plaintiff's supervisors investigated the accident, took the plaintiff's statement, and prepared an investigation report.  Dr. Bock with Promptcare saw the plaintiff the next day and diagnosed neck strain and tendonitis in the right wrist.  He prescribed a muscle relaxer, Flexeril, and indicated the plaintiff could return to work but with restrictions against lifting more than 50 pounds and repetitive grasping or pulling and pushing with the right hand.

The plaintiff missed the last 2.3 hours of his shift on April 22, 2003, telling his supervisors that he needed to go home to take his medication and that he would not be returning to work this shift as the

2

medication made him sleepy.  His absence was recorded as occupational or work-comp related.  The plaintiff did not miss any further work until after he was released for work without any restrictions on May 31, 2003.  Later during his probationary period, the plaintiff missed some hours of work on June 2, 10, 11 and 12.

After the ninety-day probationary review on June 16, 2003, the plaintiff was retained and placed under Kmart's bank of hours attendance policy which gave him 16 paid and 8 unpaid hours of chargeable absences through September 11, 2003.  The plaintiff exceeded his bank of hours after missing work on June 17, 23, 24 and 25.  He was terminated on June 26, 2003.  The plaintiff testified he told his supervisors that those absences were necessary because of the dizziness, lightheadedness, and sleepiness caused by his medication.  On the morning of June 25th, Martha Oelschlaeger, Kmart's human resources representative, informed the plaintiff that he was being terminated for exceeding his bank of hours.  The plaintiff told Ms. Oelschlaeger that his absences were due to problems caused by the medication he was taking for his work-related injury.  Ms. Oelschlaeger said she would check out the situation and get back to him.

Ms. Oelschlaeger spoke with the plaintiff's supervisors who said

that on two of the absences the plaintiff had "muttered" something about "heat and medication."  His supervisors, however, did not understand the plaintiff's comment to reference his workers' compensation injury or his medication for it.   Ms. Oelschlaeger contacted the plaintiff's physician and found nothing in her judgment that confirmed the plaintiff's complaint about the medication.  With this additional information, she consulted with her superiors who agreed with her to proceed with the termination as they did not believe the plaintiff's absences were due to the problems created by medication taken for his workers' compensation injury.

**MOTION**

The plaintiff argues his proof of retaliatory discharge at trial was so overwhelming that the court should enter judgment as a matter of law in his favor now.  Alternatively, he asks for a new trial on the basis that the jury's verdict is against the weight of the evidence or the result of prejudice or bias.  The defendant responds that the evidence was more than sufficient to sustain the jury's verdict.

**STANDARDS GOVERNING MOTION**

In the Tenth Circuit, a motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure "should be

4

cautiously and sparingly granted." *Black v. M & W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2001). Granting such a motion "is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party." *Escue v. Northern Okla. College*, 450 F.3d 1146, 1156 (10th Cir. 2006). The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the non-moving party. *Escue*, 450 F.3d at 1156. In evaluating the proof, the court does not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005). A jury's verdict is to be upheld unless it is "'clearly, decidedly, or overwhelmingly against the weight of the evidence.'" *Escue*, 450 F.3d at 1157 (quoting *Black v. Hieb's Enterprises, Inc.*, 805 F.2d 360, 363 (10th Cir. 1986)). To deny judgment as a matter of law, there must be more than merely "a scintilla of evidence" favoring the nonmovant, and the court must find that "evidence was before the jury upon which it could properly find against the movant." *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir. 1988). Judgment as a matter of law is only proper when "the evidence so strongly supports an issue that reasonable minds could not differ." *Ryder v. City of*

5

*Topeka*, 814 F.2d 1412, 1418 (10th Cir.1987).

A motion for new trial under Rule 59(a) is committed to the sound discretion of the trial court and may be granted for an action tried to the jury. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).  Such a motion is "'not regarded with favor and should only be granted with great caution.'"  *Wirtz v. Kansas Farm Bureau Services, Inc.*, 311 F. Supp. 2d 1197, 1226 (D. Kan. 2004) (quoting *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir.), *cert. denied*, 502 U.S. 926 (1991)).  It "'should be granted when the court believes the verdict is against the weight of the evidence, prejudicial error has occurred, or substantial justice has not been done.'"  *Id.* (quoting *Heyen v. United States*, 731 F.Supp. 1488, 1489 (D. Kan. 1990), (citing *Holmes v. Wack*, 464 F.2d 86, 88-89 (10th Cir. 1971)), *aff'd*, 945 F.2d 359 (10th Cir. 1991)).  In reviewing the evidence, the court looks at the evidence in the light most favorable to the prevailing party.  *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993). The court's "inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence."  *Black v. Hieb's Enterprises, Inc.*, 805 F.2d at 363.

**ANALYSIS**

As framed by the jury instructions, the central issue at trial was whether the plaintiff's termination occurred because of the defendant 's intent to retaliate against him for the exercise of rights under the Workers' Compensation Act.  In arguing that the evidence overwhelmingly established that his firing was in retaliation, the plaintiff highlights the timing of his firing, his testimony about what he told his supervisors at the time of his June absences, and his testimony about what he told Ms. Oeschlaeger in response to learning that he had exceeded his bank of hours.  If one were to consider only this cited testimony and the inferences to be drawn from it, then the plaintiff's motion would have some chance of success. The court's own recollection of the evidence at trial confirms that the plaintiff's motion, however, looks only at the evidence most favorable to him, accepts it as the only credible evidence on these material points, and fails to recognize the substantial contradictory evidence offered at trial.

The court does not share the plaintiff's impression that the close timing between his injury, absences, and discharge is "powerful and compelling circumstantial evidence of retaliation."  (Dk. 109, p. 13).  All of the events concerning the plaintiff's employment occurred within a congested time period, as the plaintiff reported his injury just over one

7

month after starting work with the defendant and his employment ended less than four months after it started.  Within this narrow time period, however, the defendant hired the plaintiff knowing that he had sustained a workers' compensation injury during his prior employment and then later found the plaintiff to have successfully completed his ninety-day probationary period even after he reported an injury and was accommodated with work restrictions for nearly two months.  The defendant's favorable review of his probationary period came even though the plaintiff was having difficulty meeting his productivity standards prior to the reported injury and even though he had missed work on several days just before the review.  This is not a case in which the employment history reveals a striking disparity in treatment close in time to a reported injury at work.  When placed in its proper context, the evidence of temporal proximity here is hardly of the import and kind that the plaintiff makes it out to be.

As for the plaintiff's testimony of what he told his supervisors on the June absences in question, it was contradicted by the testimony from both of his supervisors.  The supervisors testified that they did not understand the plaintiff to have told them at the time that any of those

absences were due to a work injury or to medication being taken for a work injury.  The supervisors testified about their employment practices and requirements if the plaintiff had reported the absences as due to treatment for a work injury.  The supervisors remembered the plaintiff saying that one or more of the absences was caused by heat and medication, but they did not know this was medication being taken for a work injury as the plaintiff did not mention this reason for taking the medication and the plaintiff had been released for work without restriction.  There was also testimony that the supervisors were expected to respect employees' rights to health privacy and not question them about the reasons for taking medication.

The plaintiff expressly told Ms. Oelschlaeger on June 25th that his absences were caused by medication he was taking for his work injury. Ms. Oelschlaeger testified to her prior conversations with the plaintiff about his work injury and about what she had discussed as his responsibility in communicating with her about any problems he was having at work due to the injury or medication.  Ms. Oeslschlaeger testified that the plaintiff did not inform her of any such problems any time between April 23rd and his termination notice on June 25th.  Ms. Oelschlaeger testified at length on what steps she took to investigate the plaintiff's representation on June

9

25th and why she came to the conclusion that the plaintiff's absences were not due to the medication he was taking for his claimed work injury. Discussing her conclusion with superiors and receiving their assent, she informed the plaintiff on June 26th of his final termination for violating the bank of hours attendance policy. Ms. Oelschlaeger laid out the reasons behind her conclusion for the jury to decide whether they were truthful or a pretext for retaliation. There was more than enough evidence for the jury to find that the reasons were not pretextual.

In its motion, the defendant lays out other evidence at trial from which the jury could have based its verdict for the defendant. The court agrees with the defendant that the evidence was sufficient for the jury to find that the plaintiff's absences in question were not due to medication taken for his work injury. There was considerable evidence at trial that placed into question the credibility of the plaintiff's testimony on the reason for his absences. His testimony was contradicted by Dr. Bock's testimony on the treatment received by plaintiff, the evaluation of the plaintiff's medical record, and the prescribed use of Flexeril. There is also the other circumstantial evidence, including the plaintiff's delayed side effects from the Flexeril, the plaintiff's excellent attendance record in May, and his

10

failure to report any medication problems to his workers' compensation contact, Ms. Oeschlaeger, until after being notified of his termination.  For that matter, the jury properly could have found that the plaintiff's own testimony on his need for and use of Flexeril lacked the consistency and details on which to base a verdict favorable to the plaintiff.

This is not a case where the evidence pointed but one way. Rather than being clearly, decidedly or overwhelmingly against the weight of the evidence, the jury's verdict stands as wholly within the realm of what reasonable minds would decide.  Leaving the credibility calls to the jury and drawing all reasonable inferences in favor of the defendant, the court finds a legally sufficient evidentiary basis to sustain the jury's verdict.

The manner in which the jury completed the verdict form raises no irrefutable inferences about the jury's understanding of the evidence, its willingness to follow the court's instructions, or its commitment to returning a verdict based on the evidence admitted at trial and not on any improper grounds of bias or prejudice.  To the first interrogatory asking whether the defendant had retaliatorily discharged the plaintiff, the jury answered, "no." The verdict form explained an answer of "no" meant that the jury would not answer question 2 and its deliberations would be completed and that the

11

verdict form was to be signed and the bailiff was to be informed that the jury was ready to return its verdict.  The jury followed the directions by not answering question 2 and having the verdict form signed.  It, however, answered question 3, finding the defendant not liable for punitive damages. While the plaintiff does not argue any inconsistency in the jury's verdict form, he does argue that ignorance, bias or defiance is reflected in the jury's decision to answer question 3.  The defendant offers that the jury was simply emphasizing their verdict against the plaintiff.  As evidenced by the parties' disparate positions, one can do little more than to speculate about the jury's motives in answering question 3.  Having already found that the jury's verdict is sustained by the evidence at trial, the court summarily dismisses the plaintiff's argument as mere speculation.  The plaintiff does not offer any reasonable or rational basis for linking the jury's decision to answer question 3 to any possibly improper arguments or erroneously admitted evidence.  Nor does he argue any inconsistency in the verdict form that requires a new trial.  The court finds no reasonable inference of any misconduct or serious misunderstanding by the jury from the mere fact that it unnecessarily answered a question on punitive damages liability.

IT IS THEREFORE ORDERED that the plaintiff's renewed motion for judgment as a matter of law or, in the alternative, for a new trial (Dk. 109) is denied.

Dated this 19th day of June, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge